**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LEROY W. GREER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-08-284-D |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Mr. Leroy W. Greer, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

**I.   Procedural Background**

Mr. Greer filed applications for DIB and SSI on November 12, 2003, alleging an inability to work since June 1, 2003. *See* Administrative Record [Doc. #9] (AR) at 57-61; 191-194. Mr. Greer's applications were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) found that Mr. Greer was not disabled. AR 14-24. The Appeals Council denied Mr. Greer's request for review. AR 5-8. This appeal followed.

## II.     **The ALJ's Decision**

The ALJ recited the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. She first determined that Mr. Greer had not engaged in substantial gainful activity since his alleged onset date – June 1, 2003. AR 19. At step two, the ALJ determined that Mr. Greer has medically determinable impairments of gout, arthritis and obesity, but that these impairments are not "severe" within the meaning of the agency's regulations. AR 19. Although the ALJ's findings at step two mandated a conclusion that Mr. Greer is not disabled, the ALJ briefly addressed steps three and four. She found that even if Mr. Greer's impairments were severe, they did not meet or equal any of the listed impairments. The ALJ also stated:

> If the claimant was considered to have severe impairments, he would have no exertional limitations and only have a nonexertional limitation to move the wrist occasionally.

AR 23. The ALJ stated that Mr. Greer could perform both of the jobs comprising his past relevant work: heavy equipment operator and correctional officer. The ALJ's cursory discussion of steps three and four of the sequential evaluation rest solely on her finding at step two that Mr. Greer's impairments are not "severe." For that reason, this Court need consider only the ALJ's findings at step two.

**III.     Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

The agency determines at step two whether the claimant's medically determinable impairment(s) are "severe." *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1521(a); 416.921(a). The agency has explained that "slight" impairments are not disabling:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

>work even if the individual's age, education, or work experience were specifically considered[.]

SSR 85-28, 1985 WL 56856, at *3. In light of these definitions, case law prescribes a very limited role for step two analysis. Step two is designed "to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability." *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring). *See also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). Nevertheless, "while the showing a claimant must make at step two is *de minimis*, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (*citing Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)).

**IV.   Issues Raised on Appeal**

Mr. Greer asserts four propositions of error: (1) that the ALJ had a duty to recontact two physicians characterized as "treating physicians;" (2) that the ALJ erred in assessing Mr. Greer's credibility; (3) that the ALJ failed to properly evaluate Mr. Greer's obesity; and (4) that the ALJ failed to give proper weight to the opinions of treating physicians.

**V.   Analysis**

    **A.   Consideration of New Evidence**

As an initial matter, the Court notes that Mr. Greer has attached medical records to his brief that were generated after the Appeals Council denied his request for review. The Commissioner contends that this Court should not consider the new medical records in

reviewing the final agency decision.[1]  This point is well-taken.  When reviewing final decisions of the Commissioner, this Court is vested with the power to enter a judgment "affirming, modifying, or reversing" the decision of the Commissioner "*upon the pleadings and transcript of the [administrative] record*[.]"  42 U.S.C. § 405(g) (emphasis added).  The medical evidence in question is not, and could not have been, included in the administrative record and should not, therefore, be considered by this Court when reviewing the Commissioner's decision.[2]

      **B.**    **The ALJ's Assessment of Medical Records and the Duty to Recontact Medical Sources**

The first and last issues raised by Mr. Greer are closely related.  Mr. Greer asserts that the ALJ did not properly analyze the opinions of Dr. Caley, Dr. Troung, and Dr. Abraham.  He further asserts that the ALJ had a duty to recontact Drs. Caley and Abraham for further clarification and explanation of their opinions.

---

[1]The new evidence includes results of blood tests and x-rays as well as the results of a physical examination.  Mr. Greer summarizes the evidence as showing osteoarthritis in knees, feet, wrists and elbow, inability to extend elbows, severe lower joint osteoarthritis, gout and severe anxiety.  According to Mr. Greer, the results of blood tests indicate chronic disease or inflammatory process.  *See* Opening Brief [Doc. #15] at 14-15.

[2]Sentence six of 42 U.S.C. § 405(g) vests this Court with the power to remand a decision to the agency when "new and material evidence comes to light, and there is good cause for failing to incorporate such evidence in the earlier proceeding." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).  For such a remand to be appropriate, a court "normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before him." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (citation omitted).  Although remand on the basis of the new evidence alone would not be appropriate in this case, the ALJ is not precluded from considering the new evidence on remand.

### 1.     **The ALJ's Analysis of Medical Opinions**

A medical opinion from a treating source is generally entitled to more weight than the opinion of a non-treating source.  *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a); 416.927(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id.*

For his opinion to be entitled to greater weight, however, the "treating physician" and the claimant must have a "relationship of both duration and frequency." *Doyal v. Barnhart* at 762. Such a relationship is necessary because the greater weight generally afforded to the opinions of "treating physicians" is based on the assumption that they can lend a "'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Id.* (*quoting* 20 C.F.R. § 416.921(d)(2)). The Tenth Circuit has explained:

> "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."

*Doyal v. Barnhart* at 762 (*quoting Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) (emphasis added in *Doyal*).

### a. Records of Dr. Thach Truong and Dr. Terrence Truong

Mr. Greer was treated by Dr. Thach Truong and Dr. Terrence Truong at the Truong Medical Center several times between 1992 and 2001. AR 142-146; 170-171. The records indicate that Mr. Greer initially sought treatment for a sprained ankle in 1992. Thereafter, the progress notes reflect that Mr. Greer complained of swelling, stiffness and arthritic pain, particularly in his wrists and elbows. AR 145-146. The record contains a note on a

prescription pad from the Truong Medical Center dated November 28, 1997, stating that Mr. Greer was seen for traumatic arthritis of the wrist. AR 171. A progress note dated March 12, 1999, states that Mr. Greer had experienced recurrent pains in the wrists about every six to eight months for the past two years with each episode lasting about one week. Dr. Terrence Truong's diagnosis was osteoarthrosis localized in the forearm. AR 144. Another note on a prescription pad from the Truong Medical Center dated November 27, 2000, states that Mr. Greer has "gouty arthritis of both wrists" and that he "cannot use a regular bow for hunting." AR 170.[3] Progress notes dated February 12, 2001, state that Mr. Greer's wrist was tender to the touch and swollen, resulting in poor range of motion because of pain. He was diagnosed with gouty arthritis. AR 142.

     Mr. Greer states that the ALJ "dismissed" these records and failed to state the weight she afforded the records. The treatment records and notes from the doctors at the Truong Medical Center do not constitute "medical opinions" as defined in the regulations. The records contain little more than diagnoses based primarily on Mr. Greer's subjective complaints. They contain no information concerning the severity of Mr. Greer's impairments or work activities which Mr. Greer could or could not do because of the impairments. Therefore, the ALJ was not required to apply the sequential evaluation when she considered these treatment notes. Moreover, the ALJ did discuss these records, all of which reflect treatment received prior to the alleged onset date, and concluded that "subsequent records

---

[3]Why this peculiar limitation was specified in the doctor's note is not clear.

outweigh these early records and show medical improvement." AR 20. The ALJ clearly considered these treatment records when she weighed the evidence. The ALJ's consideration of this evidence is sufficient and does not constitute reversible error.

### b. Opinion of Dr. Caley

The "opinion" of Dr. Caley consists of a note dated September 14, 2005, written on a prescription pad from the Jackson County Memorial Hospital Clinics. The note states that Mr. Greer is "Medically unable to work." AR 148. As the ALJ stated in her decision, there are no progress notes from Dr. Caley detailing any findings from either physical examination or laboratory testing.[4] Without specifically so stating, the ALJ implicitly determined that Dr. Caley's opinion should not be given controlling weight. This result is consistent with the regulations and Tenth Circuit law:

> A physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source.

*Doyal v. Barnhart* at 763. Moreover, a physician's opinion on an issue reserved to the Commissioner is never entitled to controlling weight or special significance. *See* SSR 96-5p, 1996 WL 374183.

At the second step of the sequential evaluation, the ALJ determined that Dr. Caley's opinion was "of negligible probative value," AR 21, because his opinion did not indicate

---

[4]There are some medical records from the Jackson County Memorial Hospital Mangum Clinic, but it is not clear which doctor signed some of these records, and some are signed by Dr. Ben Martin. *See* AR 162-164. A progress note dated January 13, 2005, questions whether Mr. Greer is disabled and questions whether he was exhibiting drug-seeking behavior. AR 160-161.

what physical restrictions supported his determination that Mr. Greer is "medically unable to work." Although the ALJ did not specifically include an analysis of each of the factors listed in *Watkins* to Dr. Caley's opinion, that omission is not reversible error in this case. The Tenth Circuit Court of Appeals has acknowledged that an ALJ need not articulate every factor set forth in *Watkins v. Barnhart*, *supra* at 7, in order to provide for meaningful review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). In this case, there was nothing else to evaluate. Dr. Caley's opinion does not divulge the nature of Mr. Greer's impairments, it is not supported by any other documents that could be discussed, and there is no evidence in the record showing that Dr. Caley ever examined or treated Mr. Greer. The ALJ's evaluation of the opinion of Dr. Caley does not constitute reversible error.

### c.   Opinion of Dr. Abraham

Dr. Abraham first treated Mr. Greer on March 23, 2006. Mr. Greer complained of pain in his hands and elbows, reported that he was "very depressed," and stated that he had gained weight. AR 173. Dr. Abraham diagnosed Mr. Greer with osteoarthritis and depression. He noted that Mr. Greer "brought some forms that need to be filled out" but stated, "At this time, I am not familiar with the pt's history." *Id.* Thereafter Mr. Greer was seen by Dr. Abraham on April 6, 2006, May 4, 2006, and July 7, 2006. AR 174-176. The treatment notes from these visits are very brief and generally state only that Mr. Greer is "in no acute distress." AR 174-176.

On May 3, 2006, Dr. Abraham completed an Arthritis Residual Functional Capacity Questionnaire. AR 165-168. The form states that he had been treating Mr. Greer for six

weeks.[5] Dr. Abraham diagnosed Mr. Greer with osteoarthritis characterized by generalized pain in all joints and severe pain caused by activity. From a check list on the form, Dr. Abraham identified positive objective signs including reduced grip strength, impaired sleep, weight change, impaired appetite, tenderness, crepitus, trigger points and muscle spasm. He indicated that emotional factors contribute to the severity of Mr. Greer's symptoms and functional limitations and identified depression. Dr. Abraham opined that Mr. Greer could sit for 30-45 minutes, could stand only 15 minutes at one time, could stand or walk about 2 hours in an 8-hour workday, and could sit about 4 hours in an 8-hour workday. Dr. Abraham opined that Mr. Greer can occasionally lift 10 pounds and rarely lift 20-50 pounds. Other limitations include stooping only occasionally, and rarely crouching, climbing ladders and climbing stairs. Finally, Dr. Abraham stated that Mr. Greer would likely be absent from work about three days per month because of his impairments.

Of the opinion evidence in the administrative record, Dr. Abraham's opinion regarding Mr. Greer's functional limitations, gleaned from this physician's answers to questions posed on the Arthritis Residual Functional Capacity Questionnaire, most nearly resembles a true "opinion of a treating source," as defined in the regulations. The ALJ noted that Dr. Abraham's assessment of Mr. Greer's limitations, if accepted, would limit Mr. Greer to "significantly less than the full range of sedentary work." AR 21. The ALJ clearly did not

---

[5]The brevity of the doctor-patient relationship between Dr. Abraham and Mr. Greer did not afford Dr. Abraham the "unique perspective" for which treating physician opinions are usually valued.

give Dr. Abraham's opinion controlling weight, and she seems to have rejected it altogether because it is "unsupported by the physician's contemporaneous progress notes" which "reveal few positive findings." AR 21. She is correct. Only the record of Mr. Greer's first appointment with Dr. Abraham contains any specificity about Mr. Greer's impairments, and this information was based on information from Mr. Greer himself. The ALJ's assessment of Dr. Abraham's opinion is sufficient.

### 2. Duty to Recontact Treating Physicians

Mr. Greer contends that once the ALJ "criticized and discounted the treating source opinions," she "triggered the requirement that the treating physicians be re-contacted." Opening Brief at 18.

Initially, a claimant bears the burden of proving disability in a social security case, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The regulations specify this requirement:

> Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

20 C.F.R. §§404.1512(c); 416.912(c). The Agency helps a claimant secure identified medical records:

> Our responsibility. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason

>to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. §§ 404.1512(d); 416.912(d). In limited circumstances, the Agency or ALJ may recontact a claimant's medical sources:

>Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
>(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. §§ 404.1512(e); 416.912(e).

The ALJ's duty to recontact medical sources is triggered, in the first instance, when the ALJ determines that there is not enough evidence in the record to determine whether or not a claimant is disabled. If the ALJ does not find the evidence to be insufficient, then she

13

is not required to recontact a medical source.[6]  Additionally, the Tenth Circuit Court of Appeals has stated that the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993).  As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records *which come to his attention during the course of the hearing*." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (emphasis added).  When a claimant is represented by counsel at the hearing before the ALJ, the burden of identifying issues that require further development usually falls on the claimant's counsel:

> in cases . . . where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development."

*Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (*quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Nothing in the record before this Court suggests that the ALJ became aware of additional medical records from any doctor.  Mr. Greer did not identify either Dr. Caley or Dr. Abraham as a treating physician in his initial applications.  *See* AR 90-103.  The one-page report from Dr. Caley was submitted by Mr. Greer's counsel.  *See* AR 147.  If medical

---

[6]The Court notes, however, that the ALJ rejected two opinions because she found they were "not based on medically acceptable clinical and laboratory diagnostic techniques."  Nothing in the Report and Recommendation is meant to suggest that the ALJ cannot or should not recontact Mr. Greer's treating sources on remand.

records or progress notes supporting Dr. Caley's opinion exist, Mr. Greer's counsel could easily have presented them to the ALJ at the same time he submitted Dr. Caley's opinion. Mr. Greer offers no reason why his counsel could not have provided the ALJ any existing medical records supporting Dr. Caley's opinion at the same time he introduced the opinion itself. Likewise, nothing in the record suggests that additional records from Dr. Abraham existed or needed to be procured for the record. Mr. Greer testified at the hearing that he had seen Dr. Abraham only three times. AR 228. The ALJ's decision need not be reversed on this ground.

### B. The ALJ's Credibility Assessment

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). In *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set forth the framework for the proper analysis of a claimant's pain. First, the objective medical evidence must demonstrate a pain-producing impairment. Second, a "loose nexus" must exist between the proven impairment and the claimant's subjective allegations of pain. If these two conditions are satisfied, the ALJ must then determine whether, considering all the evidence both objective and subjective, the claimant's pain is in fact disabling. *Id.*, 834 F.2d at 163-164. "Objective evidence" is any evidence that can be discovered and substantiated by external testing. *Id.* at 162. "Subjective evidence" consists of statements of the claimant that can be evaluated only on the basis of

credibility. *Id.* at 162, n. 2. To determine the credibility of pain testimony, the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) (*quoting Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted)).

A court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted).

The ALJ thoroughly discussed the framework for considering a claimant's subjective complaints of pain and recited the factors to be considered in determining a claimant's credibility. AR 22-23. The analysis itself, however, is brief and flawed:

> The claimant testified he is disabled due to gout with pain in the feet and big toes and arthritis with pain in the wrists and elbows. After considering the evidence of record, it is found that the claimant's medically determinable impairments reasonably could be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. In support of the foregoing finding regarding the claimant's credibility, a review of the notes on January 13, 2005, show the claimant's physician questioned whether the claimant was disabled and whether the claimant's behavior was drug seeking in nature.

AR 23. The ALJ did not address any of the factors to be used to assess a claimant's subjective complaints of pain.[7] Rather, she relied on one brief medical record from the Family Care Medical Clinic. The progress note appears to be the results of an intake interview, and it is not clear who made the notes on the form. One of the notations is: "Pt is ? disabled . . . doesn't work." AR 160. The other comment, under "Diagnosis" is: "? Drug seeking behavior." AR 161. These two short, cryptic notations constitute a mere scintilla of evidence – not substantial evidence closely linked to the ALJ's credibility findings. None of the other medical records suggest that Mr. Greer was seeking drugs for anything other than his pain. The ALJ's cursory discussion of Mr. Greer's credibility does not satisfy this Court that the ALJ's credibility assessment is closely linked to and supported by substantial evidence. It is recommended that the Commissioner's decision be reversed and remanded on this ground.

### C. The ALJ's Assessment of Mr. Greer's Obesity

The ALJ acknowledged that Mr. Greer has been diagnosed with obesity and that the effects of obesity must be evaluated under the guidance of SSR 02-1p. The effects of obesity must be considered at each step of the sequential evaluation. At step two, an ALJ must

---

[7]In her evaluation of potential limitations caused by Mr. Greer's obesity, the ALJ stated that "claimant engages in such relevant activities as bow hunting," and noted that his obesity "does not prevent the claimant from engaging in standing and walking." AR 20. To the extent that these statements could be considered an analysis of Mr. Greer's "daily activities," these limited findings are not sufficient to support the ALJ's credibility findings. Moreover, Mr. Greer reported that because of his pain, he had been forced to reduce his hunting trips to four times per year from every weekend. AR 125.

decide whether a claimant's obesity is severe either alone or in combination with other impairments:

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. (For children applying for disability under title XVI, we will find that obesity is a "severe" impairment when it causes more than minimal functional limitations.) We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning. (See SSR 85-28, "Titles II and XVI: Medical Impairments That Are Not Severe" and SSR 96-3p, "Titles II and XVI: Considering Allegations of Pain and Other Symptoms In Determining Whether a Medically Determinable Impairment Is Severe.") Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities (or, for a child applying under title XVI, if it causes no more than minimal functional limitations).
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2000 WL 628049 at *4.

In this case, the ALJ listed obesity among Mr. Greer's impairments at step two of the sequential analysis but found that his obesity did not significantly limit his physical or mental ability to do basic work activities. In rejecting Dr. Abraham's RFC findings, which were based primarily on Mr. Greer's osteoarthritis, the ALJ did not discuss the impact obesity would have on Mr. Greer's ability to stand and walk, nor did she discuss the effect of obesity on joint pain. Rather, the ALJ simply stated:

18

> Gout is a condition that waxes and wanes and is treatable with simple medications. Consequently, gout alone, while obesity related, does not prevent the claimant from engaging in standing and walking.

AR 20. The meaning of this statement is not clear. The fact that Mr. Greer can stand and walk, even during a period when his gout is uncontrolled, does not necessarily mean he is without any limitations caused by his impairments. On remand, the Commissioner should reconsider the extent to which Mr. Greer's obesity impacts his symptoms and their limiting effects.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by March  16th , 2009. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  23rd  day of February, 2009.

                                            */s/ Valerie K. Couch*
                                            VALERIE K. COUCH
                                            UNITED STATES MAGISTRATE JUDGE